Morning, Your Honor. I'm Lee Horner for Capital Options, the appellate at all three matters today. Why don't you tell me what counsel are proposing here? We propose that we start today, Your Honor, with Case 54, the Goldsmith matter, which is third on the calendar. We then jump to the Loomis matter, Case 52, and then finish with 53, the administrative case. Okay. So just so that I've got all my notes here, but I didn't exactly. So is 54 the issue of the bankruptcy court dismissing capital's adversary claims against Goldsmith and G2? It is, on limitations grounds. Okay. Then you want to go to 50? 52. 52. And is that the bankruptcy court dismissing capital's adversary claims against Loomis and Baker? That is correct. And then the last one that you want to argue is the denial of the confirmation of the bankruptcy plan, right? That's correct, Your Honor. Okay. That makes sense, because the last one is dependent on how we rule on the first two, right? Nicely. Okay. And just so that I know I have over here, I believe I have counsel for Loomis and Baker and Goldsmith and G2, correct? Correct. Can I just have you state your names? Your Honor, I'm Warren Stapleton, appearing on behalf of G2 and Goldsmith. Okay. And, okay, so that's Warren Stapleton. And do you agree to proceeding that way? We do, Your Honor. Okay. And then the other party? Your Honor, Steve Giron, on behalf of Baker Hotstepler and Mr. Loomis and G2. Okay. And so since you're not at a mic, I'm just going to say that also it's Steve Hotstepler, right? Giron. Oh, okay. Okay. And you also agree. And so I think we have an agreement on the parties. So we'll proceed that way. And so each of the three cases have ten minutes for each side. And so it also looks like the way that you've divided it up, that the other, that the two appellees won't have to, they won't have to divide their parts, right? Correct. So you'll just, when you have it, so you have the whole time to yourself if we divide the cases that way. Okay. So then we'll start with 54, right? Yes, Your Honor. All right. All right. Now we'll start the clock and state your name and your appearance on that case. Lee Horder, representing Capital Options in the 54 matter, Your Honor. I would like to reserve three minutes, if it pleases the Court. Okay. And I guess the issue here, because this was dismissed on limitations grounds, is when does the limitations clock stop exactly? There's been several points that the statute of limitations did not run, contrary to what the Court found as a matter of law. The first is the fact that there was a State court receivership which was filed 14 months after the JDCA, the Joint Defense Agreement, which prescribed that there would be disbursements of certain funds that were in contest pending a resolution of Capital Options membership in G-2. That agreement was amended, and the amendment did not require a finding that Capital Options was a member. It said that for purposes of the JDCA, it was a member, a client member it called specifically, and that upon receipt of certain funds on enumerated cases, those funds would be disbursed, the client members would cause them to be disbursed. Well, the problem we have, though, is, first of all, the Court disregarded the fact that there had been a receivership pending when the case was filed, when the Chapter 11 was filed, which would be operative to stop the limitations clock. It was filed 14 months into the case. The other point is the statute of limitations was anything other than two years properly preserved below? I'm not sure that was, Your Honor, to be honest with you. We got sidetracked on what stopped the clock, and the thrust of the argument below was it had stopped within the two-year period, the shortest period, so we didn't reach the four-year limitations period. Well, you came up with that later. The fight below was over whether the two years properly applied, right? Well, correct. But that's what we're dealing with here, so that determines the issues on appeal, which means that we're now dealing with whether the two years properly applied, not whether it's a four-year statute versus a two-year statute of limitations. Did I understand the record correctly? You do, Your Honor, and it's whether the clock stopped within that two-year period. By clock, I mean like a stopwatch. We contend that it did. Another point, other than the receivership matter, was California's Code of Civil Procedure 351, which is a statute from the 1800s that says if you're absent from California, the clock doesn't start until you come back, or it will start and stop depending on if you're in or out of California. Now, in the record is the California Supreme Court due versus Appleberry that says it's just that. They said, look, this is modern day, but the legislature hasn't seen fit to change it, and until they do, that is still good law. Now, no court has to say that. Unless it's unconstitutional. Well, they said it was constitutional. Federal unconstitutional. The – well, the – there's been subsequent decisions, Your Honor, as you're aware, that say it affects the Commerce Clause. But the Appleberry case did not involve someone engaged in commerce, and in this case, there's no evidence that Mr. Goldsmith was engaged in interstate commerce. Appleberry specifically said it doesn't stop you from leaving California if you want to leave. And no – no court of competent jurisdiction has reversed that. We did, by the way, early on file a motion to certify that question to the California Supreme Court, and I don't see in the record where anything had been done on that. But there was a recent request to the California Attorney General under the applicable appellate rules to give a ruling, is this constitutional or not. And what – which court – in which court were you when you asked for this California Supreme Court to take the question? We filed a motion in the Ninth Circuit, Your Honor, to do that. We filed that motion early on in our case here. The problem with the Attorney General, although that is proper appellate procedure as we look at the appellate rules, is the Attorney General has this limited scope of people that they will give opinions to. And unfortunately, the Ninth Circuit is not on that. So my suspicion is they just took no action on your request of a couple of months ago to determine the constitutionality on that point. Well, okay. So to your statute of limitations on an oral agreement, if that's – that's what we're looking at, are – would you agree that factual questions that we would – how we would generally defer to the bankruptcy court for that on determination of factual questions? Well, it's really a mixed question, Your Honor, which gives you de novo review. The – it's not disputed when the JDCA was signed – executed, and that's when the court said this is when the clock starts if you're going to dispute this oral operating agreement. That's not in dispute. The question then, and also the fact that the receivership was filed 14 months later, is not in contest. So now it becomes, did the court properly apply the law to the facts of the case? And we would suggest a de novo review is appropriate for that. We did not agree – let's see now. Well, the other point was concealment by a fiduciary would also toll the running of the clock, but we didn't really get to that because this is a 12b-6 motion and the court felt on the face of the complaint it would not survive because the two years had run by the time the adversary had filed. We suggest that an evidentiary hearing is required, and because of all this extraneous matter that seems to have come in on a 12b-6 motion, we'd also ask that it had been converted to a summary judgment proceeding so we could have some sworn testimony to sort this out. The court declined to do that. So that's – that's pretty much that. As far as the disqualification of counsel issue, we're just going to submit on that. I like Mr. Stapleton. He's a great guy, but you can't serve two masters. You can't serve the target of the turnover action and then serve the LLC that wants its money back, but because capital options had not yet been determined to be a member of G2, which has that cause of action, the court said we're not going to get into that. So I'm just going to submit on that because it's in the record and it is what it is. Does the panel have any questions for me at this point? No, and that would leave you three minutes to reserve. Very well. We'll reserve. Thank you. Thank you. Good morning, May it please the Court. I'm Warren Stapleton here on behalf of George Goldsmith and G2. Let me just start by saying that, you know, this is a fairly straightforward limitations case. Mr. Horner's client pled that the limited liability company operating agreement was at all times an oral agreement. He confirmed that upon questioning from Judge Nielsen in the trial court. So the four years comes up later. The four years comes up later, and in fact, the four years doesn't actually appear until, and both the four years and equitable tolling, this idea that the receivership had told the limitations period doesn't actually come up until the motion for reconsideration. So both of those arguments were dispensed with by Judge Nielsen because Judge Nielsen asked Mr. Horner, you know, could these have been raised before, and of course, they could have been. There's no new evidence with respect to those things. All of the issues related to the four-year agreement were either in the motion to dismiss or the complaint themselves, and so the Court dispensed with both of those arguments because they hadn't been raised. You're not allowed to raise new arguments on a motion for reconsideration. And before I go further, I did want to clarify that. I think what the Court did in this case with respect to the California Attorney General was simply give notice under Federal Rule of Appellate Procedure 44 and 28 U.S.C. 2403b, just saying, hey, you know. If we're going to pass on the constitutionality of it, we have to give you a chance to come here and say something. That's correct, Your Honor. That's exactly right. Okay. So I just wanted to make sure that that was understood. And they don't want to come here and say anything, so. That's right. And so what we so, I mean, from our standpoint, then, it comes down to tolling. If the two years applies, there's just simply no way that capital options can win simply because even if you toll, for example, let's take the receivership. If you were to toll the receivership proceeding from June of 2011 to its conclusion, which was dismissed by the Chapter 7 trustee on July 5th of 2012, so you have, you know, a period of approximately 13 months. If the statute of limitations had run for about 14 months before then, and then it runs starting again from July 5th of 2012, well, then that's only 10 more months. That gets you to July of 2013. But this wasn't filed until July of 2014. And even if you were to stack the Section 108 tolling, which wasn't raised in the trial court at all, wasn't even raised, it was raised for the first time in front of the BAP, and the BAP said you didn't raise it before, so it's waived. It wasn't even raised in the motion for reconsideration. Even if you were to stack equitable tolling under, with the receivership proceeding and Section 108, that only carries you to two years from the petition date, which is June 14th of 2014. Again, this complaint against my client wasn't filed until July 28th of 2014. So no matter whether, you know, I don't think either of those apply for a lot of the reasons that both the trial court, or at least with respect to 4 years and equitable tolling, while the trial court said no, and with respect to Section 108, what the BAP said, and I think it's correct, is the statute of limitation in this case actually expired before the bankruptcy was ever filed. So Section 108, which saves statute of limitations for debtors, doesn't apply. And so it just has no application because the lawsuit was dead before it, before the debtor filed for bankruptcy. So do we have to, do we have to get to the 351 argument? Because your, they're claiming that it told the statute of limitations while Goldsmith was outside California, right? That's correct, Your Honor. And your position is that that would violate the Commerce Clause? It would. And it's been held by this Court. It's been held by a number of California court of appeals decisions to violate the Commerce Clause. I think it has to be addressed, and here's why. Because if tolling for, by absence from the State is applicable, it's, I'm not sure it's completely part of the record, but certainly it's true from the record from 2012 to 2013 at least, from the tax returns that have Mr. Goldsmith's Montana address on them, that he's been out of the State. So the Court would have to rule on that if it has to basically say that this tolling is not allowed. And it's clearly not allowed under this Court's decision in Abramson. And then I relied heavily on the Heritage Marketing case, which was a California court of appeals decision that occurred after. So just so the timeline is clear, Due v. Appleby was a 1979 decision basically in the California Supreme Court, and it related to this 1872 California statute. In 1990, after the United States Supreme Court ruled in Bendix that these type of sort of, you know, the defendant's absence from the State statutes provide or essentially negatively impact the Commerce Clause, then the Ninth Circuit had occasion to review Section 351 in a case that involved a person who was originally in Massachusetts but then in New York. They had done a contract with a person in California, and the Ninth Circuit said, no, the Section 351 as applied to this person in this instance is unconstitutional. Your point is that this is controlled by Abramson, correct? It's controlled by Abramson. And even if, even if, and I, it is controlled by Abramson. Don't get the even-ups. Stay with me on Abramson. And so would you say that 351 would be unconstitutional as applied? As applied. That's right, Your Honor.  And on that point, with respect to as applied. Would it be shown because Capital Options hasn't shown Goldsmith relocated for non-business purposes? That's right. As far as I know, there's no indication it was for business purposes. He just simply moved. Yeah. There's no showing one way or the other in the record, is there? There is no showing one way or the other. That's the point. There's no showing. Well, there's, in terms of where he was in Montana, in the record, there's indications in the record that he was in Montana during that time. And so that's in the record. Why he moved, I don't know that it matters under either the teaching of Abramson or Heritage Marketing or the other California Court of Appeals decision, which is Dan Clark Family Limited Partnership. And to specifically respond to the Court's question about as applied or, you know, sort of I think in the Commerce Clause analysis you'd say, okay, is it discriminatory on its face or then does this create an impermissible burden on the Commerce Clause? What in Dan Clark Family Limited Partnership, which was actually the case relied upon by Judge Nielsen, in that case you had defendants or a plaintiff was a Texas LLC. The defendants were residents of Mexico. Transaction occurred in California. That's why California was implicated, a little, you know, kind of question as to why California has an interest in preserving any of these rights. But that's how it fell out. And it dealt with moving. And it said this is, with respect to the as applied question, it said this is, we're doing it essentially that it impacts interstate commerce or it negatively impacts interstate commerce, but it's not discriminatory on its face. That was in footnote nine in that decision. So, I mean, I think it is unconstitutional under the teaching of Abramson, but it's also unconstitutional at least under the California Court of Appeals interpretation of Federal constitutional law in heritage marketing and in Dan Clark Family Limited Partnership. With respect to, I think, really the only other thing I haven't really touched upon is the four-year statute of limitations. The four-year statute of limitations, again, does not arise until the motion for reconsideration. It doesn't rescue even if, bless you, even if the four-year statute of limitation applied. What happened here was there was an agreement between the parties, a somewhat extraordinary written agreement between the parties that says, one, you're not a member of G-2, two, there aren't going to be any distributions from G-2 unless we reach a further agreement, and three, you're not a manager of G-2. And that was in writing and signed by the parties on April 20th of 2010. That's why there's no sort of question about, oh, when did this really start to accrue? And so even if you were to go from that day four years forward, you only get to April of 2014. And, again, this was not filed until July of 2014. And even if, again, you stack 108 tolling, you still don't get to, you only get to June of 2014, not to July of 2014. And so, and that was not pled. With respect to either one equitable tolling or the four-year, not only was it not pled, but it just wasn't even, there wasn't a question with respect to whether or not they could amend. They didn't ask to amend. So I see that my time is just up. So unless the Court has questions, I have nothing further. Thank you. Thank you. Briefly, going back to the issue of the California Supreme Court sitting en banc, by the way, and the Due v. Appleberry case, they did say that 351 was constitutional. That case did not involve interstate commerce at all. The other case, first of all, the inferior courts of California cannot overrule, as you know, the California Supreme Court. The way they get around that, though, is say, but they didn't consider the Commerce Clause, and these people that are engaged in interstate commerce, it does affect them. So from that standpoint, it would be unconstitutional. But as Your Honor pointed out, there's nothing in the record that shows Mr. Goldsmith was engaged in interstate commerce. G-2, certainly. Well, but if we follow your interpretation of Section 351 and told the statute while he's outside of California, would there be any limitation on whether an action could be brought if he remained outside of California? Why wouldn't such a result violate the Commerce Clause? Well, if he's engaged in commerce, that's one thing. But he wasn't, at least according to the record. And Your Honor's right, there would be no limitation. That's what the statute says. Until you come back into California, the clock doesn't start. Or it stops while you're out, I guess, is the better way to put it. Bendix certainly was a commerce case. The other cases that were cited were commerce cases. So it's our contention that 351 is entirely constitutional as applied or as should have been applied in this case. That's, I think, the sum and substance of everything. And I think we've hit the points we needed to cover, unless the panel has any questions. We don't appear to. Very good. Thank you. We'll submit this. Okay. So that matter will stand submitted.
judges: Wallace, Callahan, Nguyen